### Dave Coleman v. The State.

#### No. 4056.   Decided October 14, 1908.

**1.—Local Option—Election—County Judge—Certificate of Publication—Certified Copy.**

It is immaterial whether the county judge shall himself write the order of publication of the result of a local option election or cause same to be written by the clerk of the county court; and where in a trial for the violation of the local option law a certified copy of such order was introduced in evidence, which original order was in the hand writing of the clerk, the same was sufficient; and especially where the original certificate signed by the judge himself was also introduced in evidence authenticating the entire minutes of that term of the commissioners court; there being nothing to the contrary to show that this was not the official act of the couny judge.

**2.—Same—Loan—Sale—Gift—Charge of Court.**

Where upon trial for a violation of the local option law the evidence raised the issue as to whether there was a socalled loan or sale of whisky, or a gift, and the defendant requested instructions upon the question of gift, it was error not to have submitted them, although they were not in exact form.

Appeal from the County Court of Coleman.   Tried below before the Hon. F. M. · Bowen.

· Appeal from a conviction for a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Woodward & Baker,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the county court for unlawfully selling intoxicating liquors in violation of the local option law.   He was tried thereafter at the April Term, 1907, of the county court of said county and his punishment assessed at a fine of $25 and twenty days imprisonment in the county jail.

There are a number of questions raised on the appeal, many of which were considered and decided adversely to appellant in another case pending in this court.   There is one matter, however, which we desire to treat at somewhat more length than has heretofore been done

On the trial in making proof that local option had been legally adopted in precinct No. 7, Coleman County, Texas, the State introduced a certified copy of the minutes of the commissioners

court thereof certifying that the publication of the result of the local option election theretofore held had been duly made.

This certificate is as follows:

"The State of Texas,

"County of Coleman,

"I hereby certify that the order declaring the result of the local option election held at Santa Anna, Texas, on the 9th day of June, 1894, for justice precinct No. 7 Coleman County, Texas, was published in the Coleman Voice, a newspaper published in the town of Coleman, Coleman County, Texas, for four successive weeks; that is, for five weekly issues of said paper.

"H. A. Orr, County Judge of
Coleman County, Texas."

This certificate was duly authenticated by the county clerk of Coleman County, Texas, and evidenced the fact that same was a true and correct copy of a certificate entered by the county judge declaring the publication of the result of such election as same appears of record in the minutes of the commissioners' court of said County. It was sufficient under the law to evidence due publication of the result of such election, and made out the State's case. The Revised Civil Statutes, article 3391, provides: "An entry thus made, or a copy thereof certified under the hand and seal of the clerk of the county court shall be held sufficient prima facie evidence of such fact of publication." To rebut the case so made by the State, appellant introduced one Wood, who testified that he was then county clerk of Coleman County, and custodian of the minutes of the commissioners court thereof; that he was acquainted with the handwriting of both H. A. Orr and H. D. Walker. That in 1894, at the time the above quoted order was made, Orr was county judge of Coleman County, Texas, and Walker was county clerk of said county. That the order declaring the result of the election was entirely written by the county clerk, H. D. Walker, and said Orr's name was signed to said order by said Walker. That is, that said order was written by and said Orr's name was written in the handwriting of said H. D. Walker, the clerk, and that there was no other order pertaining to this matter in the minutes of the commissioners court that he had been able to find. It further appears by the testimony of this witness that the order above quoted was written on page 131 of volume E, Minutes of the commissioners court, of Coleman County. On page 132 of the same minutes this witness testified that he found the true signature of said Orr at the bottom of the minutes, and attested by H. D. Walker, county clerk, stating that the above and foregoing *six pages* of the minutes of the commissioners court are true and correct and the order introduced herein is included

in the minutes of the court which are approved and signed by H. A. Orr, county judge, such minutes being approved and signed by Orr in his own handwriting. This order of approval is as follows: "It is ordered by the court that the above and foregoing six and one-half pages of writing containing all the minutes of the acts of the Honorable Commissioners' Court of Coleman County, Texas, at the August Term 1894 thereof and this day, August 18, 1894, read over in open court be and the same are hereby approved and that court adjourned.

"Attest, H. D. Walker, County      "H. A. Orr, County Judge of
Clerk of Coleman County, Texas.      Coleman County, Texas."

It further appears that the above order quoted is on another and different page from the original signatures of Orr, the county judge, and Walker, the clerk, and there is other business transacted by the court between these signatures and the said order. That the order above quoted constitutes about one fourth of a page in the book and the remaining six pages relates to other business transacted by the court which had no reference whatever to the local option election in question. We held in the case of Walker v. State, 52 Texas Crim. Rep., 293; 106 S. W. Rep., 376, that the entry required to be made by the county judge on the minutes of the commissioners court need not be made by him in person, it being sufficient if he caused the entry to be made while acting in his official capacity. Discussing that question, Judge Brooks says: "The only other question we deem necessary to review is whether or not the county judge could write out the certificate or dictate same and have the clerk copy the same upon the minutes of the commissioners court. We hold that he could. The mere fact that the clerk did the manual labor of transcribing the order upon the minutes either from the copy furnished by the county judge, or wrote the order upon the minutes under dictation of the county judge, there being no question or cavil over the fact that the county judge was directing the entry of the certificate, would not vitiate the certificate. There could be no merit in the insistence that the county judge should, with his own hand, write the certificate upon the minutes, unless the merit lay in the fact that everybody knew the handwriting of the county judge. The pith and point of the whole matter lies in the fact that in the official capacity the certificate is entered or caused to be entered by the man who is acting county judge at the time it is necessary to make the certificate. We have held that any county judge can make the certificate, whether he be the one that presided over the commissioners court at the time the election was held or not. See Crockett v. State, 40 Texas Crim. Rep., 173; 49 S. W., 392. If any judge can enter the order, as held in the above cited case, then certainly there is no merit in the contention that the county judge has to

enter the order with his own hand. We accordingly hold that the certificate was sufficient." It will be observed in this case that the testimony of County Judge Orr was not produced, nor was the testimony of Walker, who was then county clerk, taken. Whether these parties or either of them are now living or dead we can not say, nor are we advised. The election took place in 1894, and the result and publication of result appears to have been duly made. The act of the county judge in making the entry on the minutes of the commissioners court is essentially ministerial. He is required by law to make it in the sense of having the authentic evidence of such publication entered in the minutes of the commissioners court. Whether he shall himself write such order with his own hand or cause same to be transcribed is, as we conceive, wholly immaterial. Now, in this case it appears that the proper entry was made in the right book, at the right time, and in the handwriting of a bonded official occupying the most intimate relations to the judge, and transcribed at length on page 131 of volume E., minutes of the commissioners court. The certificate introduced in evidence authenticating the minutes of this term of the court declares that the six pages of the minutes of the Commissioners' Court of Coleman County preceding page 132, on which appears the acknowledged signature of the county judge, had been "read over in open court" and it was declared that the same be approved. This implied of necessity if the recital is true, that the county judge had read the minutes of the court which appeared on the preceding page 131, and the same necessity implied that such entry appearing on page 131 had been approved and adopted by him as his own act. We think, in view of all the circumstances, the great length of time since the entry was made and the absence of any showing by the county judge or county clerk, Orr and Walker, that in fact such entry was not made by the consent of and under the authority of the county judge, that the legal effect of the final certificate of the county judge is in express terms to legalize, ratify and adopt the entry made by the clerk as the official act of the county judge which the law requires him to make and to evidence the fact that same was made under his direction.

We think, however, that this case must be reversed for the following reason: The sale in question was alleged to have been made to one Isaac McHorse. McHorse testified in substance that on the 24th day of December, 1906, he approached appellant and asked him if he had any whisky, and he (appellant) said no, but that he could order some, and "I said no, I want it now," and he said, "I might borrow some from somebody until mine could come." That he then gave appellant an order for a quart of whisky, and paid him the money. That about this time Bob Taylor came into the house. "I told him I had ordered a quart of whisky through Mr. Coleman and wanted to borrow a quart until mine came. He

told the defendant to let me have a quart of his whisky, which the defendant did. I told said Taylor when my whisky came defendant would let him have it." On cross-examination he said that the conversation between himself and Taylor took place near the north side door and the defendant was behind the counter on the south side of the room. That this room was some eighteen or twenty feet wide, and the defendant was near the south side and across the room from where they were. That he could not swear and would not state it to be a fact that the defendant heard the conversation between himself and Taylor. On redirect examination he declared, however, that appellant took part in the conversation, and that he and Taylor were talking loud enough for him to hear them, but he does not know whether he heard all he said or not. Appellant testified in his own behalf, as follows: "I never heard any conversation between the witness McHorse and Taylor and never told the witness that Taylor would loan him the whisky. All that I heard said Mr. Taylor and Mr. McHorse came up there to the counter where I was. Mr. Taylor said, 'Dave, give McHorse a quart of my whisky,' and I understood from that he was making him a present of it, and I had no knowledge or belief that he was loaning it to him. Mr. Taylor stated in this connection that Mr. McHorse wanted the whisky for his Christmas egg nog, and I supposed from that that he was making him a present of it." This testimony clearly raises the issue between the State and defendant as to whether there was a loan of whisky from Taylor to appellant under such circumstances as to constitute the transaction under our ruling a sale, or whether, as claimed by appellant, the transaction evidenced a gift of the whisky by Taylor to McHorse.

In this state of the record appellant requested, among others, the following special charges: (1) "You are further instructed in this case that although you may believe that the witness McHorse borrowed the whisky from one Bob Taylor, still you will not be authorized to convict the defendant unless you believe from the evidence in this case, beyond a reasonable doubt, that the defendant knew that same was a loan and aided and abetted or encouraged the said Taylor to loan, if he did, the witness McHorse the whisky in question, and if you have a reasonable doubt as to this matter it will be your duty to acquit the defendant." (2) "You are further instructed in this case if you believe from the evidence that the witness McHorse intended to borrow the whisky alleged to have been sold in the indictment from one Bob Taylor but that said Taylor intended the whisky in question as a gift and not a loan or if you have a reasonable doubt as to these matters it will be your duty to acquit the defendant and say by your verdict not guilty." While these special instructions do not with exact correctness apply the law to the testimony, they are nevertheless sufficiently accurate to directly call the attention of the court to the

issue entirely omitted in the court's general charge. Indeed, the last requested instruction quite pointedly directs the attention of the court to the issue raised by the evidence, and which appellant was entitled, as a matter of right, to have submitted to the jury. It requires no authority to sustain this proposition so often laid down that it is the duty of the court in every case to submit every issue and question of fact to the jury where there is any evidence raising the defense, and this without reference to the court's opinion, and without reference to whether the testimony raising such issue is cogent or slight. The jury are arbiters and triers of all matters of fact. Every appellant in every case has the right under appropriate instructions to have the jury pass on every defense raised by the evidence. The testimony in this case directly raises the issue that the transaction between Taylor and McHorse was a gift, and neither a sale nor a loan. In this condition of the record this issue should have been submitted to the jury. The court submitted only the question of a sale, under the form of a loan. The matter of gift was not mentioned in his general charge, nor indeed referred to. We can not too strongly urge upon the trial courts the importance in every case of submitting every issue to the jury. What the jury might have thought about the matter if submitted to them we can not know. We do know that the issue was raised by the evidence, and that same was not submitted. Our Supreme Court in the recent case of Harpold v. Moss, 109 S. W. Rep., 928, has thus stated the rule: "It is peculiarly the province of the jury to determine the credibility of witnesses, and the weight to be given to the testimony, and for a court to decide that the testimony is entitled to no credit because overborne by contradictory testimony, or so contrary to circumstances proven as to render it improbable, is to improperly assume the functions of a jury."

There are a number of other questions raised in the record, most of which have been fully discussed by us in other cases decided at the late Austin term of the court, and do not seem to require further treatment at this time.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*